IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 SEP 29 PM 5: 11

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

AIJALON WALLACE McLITTLE, II,    X
                                 X
        Plaintiff,               X
                                 X
vs.                              X
                                 X    No. 03-2870-B/V
UNITED STATES OF AMERICA,        X
                                 X
        Defendant.               X
                                 X

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Aijalon Wallace McLittle, II, Bureau of Prisons ("BOP") inmate registration number 21050-039, an inmate at the Federal Correctional Institution in Sheridan, Oregon, filed a pro se complaint pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., in connection with his previous confinement at the Federal Correctional Institution in Memphis ("FCI-Memphis") on November 20, 2003. The Court issued an order on July 12, 2004 that, inter alia, dismissed the Bivens claim, without prejudice, pursuant to 28 U.S.C. § 1997e(a) and authorized service on the FTCA claim. The Court issued a subsequent order on December 1, 2004 clarifying that the United States of America is the only

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 9-30-05



proper defendant to this action. Defendant filed a motion to dismiss or, in the alternative, for summary judgment on December 16, 2004. Plaintiff filed a response in opposition to the defendant's motion on February 18, 2005.

Although the defendants rely on both Fed. R. Civ. P. 12(b)(6) and 56, both parties have submitted substantial evidence outside the scope of the pleadings and, therefore, it is appropriate to analyze the motion under Rule 56. See Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

Summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The

moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[1]

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury

---

[1] Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

could return a verdict for the non-moving party." <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>see also</u> <u>id.</u> at 252
("The mere existence of a scintilla of evidence in support of the
plaintiff's position will be insufficient; there must be evidence
on which the jury could reasonably find for the plaintiff. The
judge's inquiry, therefore, unavoidably asks whether reasonable
jurors could find by a preponderance of the evidence that the
plaintiff is entitled to a verdict[.]"); <u>Matsushita</u>, 475 U.S. at
586 ("When the moving party has carried its burden under Rule
56(c), its opponent must do more than simply show that there is
some metaphysical doubt as to the material facts.") (footnote
omitted). The Court's function is not to weigh the evidence, judge
credibility, or in any way determine the truth of the matter,
however. <u>Liberty Lobby</u>, 477 U.S. at 249. Rather, the inquiry is
"whether the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law." <u>Id.</u> at 251-52.

Moreover, Fed. R. Civ. P. 56(f) provides as follows:

> Should it appear from the affidavits of a party
> opposing the motion [for summary judgment] that the party
> cannot for reasons stated present by affidavit facts
> essential to justify the party's opposition, the court
> may refuse the application for judgment or may order a
> continuance to permit affidavits to be obtained or
> depositions to be taken or discovery to be had or may
> make such other order as is just.

"Beyond the procedural requirement of filing an affidavit, Rule
56(f) has been interpreted as requiring that a party making such a

filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." <u>Cacevic v. City of Hazel Park</u>, 226 F.3d 483, 488 (6th Cir. 2000); <u>see also</u> <u>Good v. Ohio Edison Co.</u>, 149 F.3d 413, 422 (6th Cir. 1998); <u>Plott v. General Motors Corp.</u>, 71 F.3d 1190, 1196-97 (6th Cir. 1995). Moreover, the Sixth Circuit has held that, unless the nonmoving party files a Rule 56(f) affidavit, a district court cannot decline to consider the merits of a summary judgment motion on the ground that it is premature. <u>Wallin v. Norman</u>, 317 F.3d 558, 564 (6th Cir. 2003).

For purposes of this motion, the following facts are undisputed:[2]

1.   Plaintiff is a federal inmate currently incarcerated in the Federal Correctional Institution ("FCI"), Sheridan, Oregon, and has been so designated since December 4, 2002. (Declaration of Clarrisa M. Greene, dated Nov. 4, 2004 ("Greene Decl."), at Att. A.)[3]

2.   Plaintiff was designated to FCI-Memphis from April 8, 2002 to September 23, 2002. Plaintiff is serving

---

[2]   The Court's task is complicated by plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides that "the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." Although the plaintiff submitted a statement of disputed factual issues, his list does not track the list submitted by the defendant and it does not attach portions of the record. Nonetheless, the Court has attempted, by examining the complaint, which was sworn to under penalty of perjury, and the plaintiff's declaration, to discern the extent to which plaintiff is able to dispute the proposed factual findings submitted by defendant.

[3]   The Greene Declaration is Exhibit 1 to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment and Supporting Memorandum of Law, filed Dec. 16, 2004 ("D. 12/16/04 Br.").

a sentence of one hundred eight (108) months for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), and a sentence of sixty (60) months for use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (Greene Decl., Att. B.)[4]

3. On Monday, April 22, 2002, at approximately 10:30 a.m., plaintiff entered the Lieutenant's Office at FCI-Memphis and requested protective custody. (Declaration of Mose Hinton, dated Oct. 29, 2004 ("Hinton Decl."), at ¶ 4;[5] see also Compl., ¶¶ 11-12.)

4. Plaintiff alleged he had received threats on his life from inmates in general population at FCI-Memphis. (Hinton Decl., ¶ 4; see also Compl., ¶¶ 11-12.)[6]

5. Pending investigation into his request for protective custody, staff placed plaintiff in a holding cell in the Special Housing Unit ("SHU") at approximately 1:30 p.m. He was originally placed in a holding cell. (Hinton Decl., ¶ 5; see also Compl., ¶¶ 12 ("Plaintiff was then sent to Segregation under protective custody."), 13.)

6. At approximately 1:45 p.m. the SHU Officer attempted to place plaintiff in a two-man cell. (Hinton Decl., ¶ 5; see also Compl., ¶ 14.)

7. Plaintiff refused to be housed with any other inmates in SHU. Lieutenant Hinton instructed the officer to return plaintiff to the holding cell so that they could check SENTRY to determine whether any of the

---

[4]    In his complaint, which was sworn to under penalty of perjury and is the functional equivalent of an affidavit, Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001); Weberg v. Franks, 229 F.3d 514, 526 n.14 (6th Cir. 2000), plaintiff asserts that he "is in prison for RICO robbing drug dealers. Plaintiff was a[n] organizer of this RICO group. Because these robberies were organized the drug dealers was'nt [sic] aware who were robbing them, until we were indicted and exposed to the media. Plaintiff['s] identity was exposed and murder contracts were put on his life in society and the prison system." Compl., ¶ 9. The Court will assume, for purposes of this motion, that that statement is correct.

[5]    The Hinton Declaration is attached to defendant's motion as Exhibit 2.

[6]    According to the complaint, plaintiff told the Lieutenant that "he was just threatened with a knife BY TWO INMATES. Plaintiff told him he had contracts on his life for robbing drug dealers and that his identity has been exposed because the inmates called out his street name nobody knew in population." Compl., ¶ 12.

inmates in SHU posed a danger or threat to plaintiff. (Hinton Decl., ¶ 5; see also Compl., ¶¶ 15-18.)

8.   Lieutenant Hinton verified that plaintiff had separatees but none of his separatees were housed at FCI-Memphis. (Hinton Decl., ¶ 6.)

9.   Lieutenant Hinton did not discover any additional information to prevent plaintiff from being housed with another inmate in SHU. (Hinton Decl., ¶ 6.)

10.   Lieutenant Hinton then informed plaintiff of his findings. (Hinton Decl., ¶ 8.)

11.   Lieutenant Hinton and Officer Dillard placed plaintiff in restraints and escorted him to cell B-102. (Hinton Decl., ¶ 8.)

. . . .

13.   At approximately 6:45 p.m. on April 22, 2002, plaintiff's Unit Manager, Mr. Starks, met with plaintiff to discuss his SHU placement. (Declaration of Marzell Starks, dated Oct. 8, 2004 ("Sparks Decl.", at ¶ 6.)

14.   During the rounds, Unit Manager Sparks met with plaintiff to discuss his SHU placement. (Starks Decl., ¶ 6; see also Compl., ¶ 32.[7])

15.   Plaintiff informed Mr. Starks that he had requested protective custody. Plaintiff also stated that he was declaring a hunger strike to protest being placed in a cell with another inmate and the alleged excessive use of force by BOP staff. (Sparks Decl., ¶ 7; see also Coml., ¶ 33.)

16.   Plaintiff gave Mr. Starks a letter addressed to Associate Warden Aaron in which plaintiff declared his hunger strike. (Sparks Decl., ¶ 7.)[8]

17.   Plaintiff showed Mr. Starks a small bruise on his inner left arm. Mr. Starks promptly contacted the

[7]   Any minor factual dispute about the time when Sparks spoke to plaintiff is not material.

[8]   The defendant contends that plaintiff did not engage in a hunger strike, and the plaintiff counters that he did. This dispute is immaterial to the FTCA claim at issue.

7

physician's assistant on duty to conduct a medical examination of plaintiff. (Sparks Decl., ¶¶ 7-8; see also Compl., ¶¶ 33-34.)

18. The medical examination revealed plaintiff had a dime size, purple contusion at the bend of his left arm. (Greene Decl., Att. C; see also Compl., ¶ 29 & Ex. B.[9])

19. Plaintiff did not have any injuries that required medical attention. (Starks Decl., ¶ 8.)[10]

20. Lieutenant Worthington concluded his investigation into plaintiff's request for protective custody in July of 2002. (Hinton Decl., ¶ 12.)

21. Although Lieutenant Worthington could not substantiate plaintiff's claims for protective custody, he did conclude that plaintiff's request for protective custody resulted in a perception by other inmates that could lead to a threatening environment for plaintiff. (Hinton Decl., ¶ 12.)

22. Lieutenant Worthington recommended plaintiff's transfer to a BOP facility in a different region. (Hinton Decl., ¶ 12.)

23. Plaintiff remained in SHU at FCI-Memphis until his September 23, 2002 transfer to FCI-Sheridan. (Hinton Decl., ¶¶ 10-11; Greene Decl., Att. A.)

The FTCA constitutes a limited waiver of sovereign immunity by the United States. See 28 U.S.C. §§ 1346, 2671-2680. In general, the FTCA specifically exempts the intentional torts of assault and battery from its waiver of sovereign immunity. 28 U.S.C. § 2680(h). However, claims of assault and battery against "investigative or law enforcement officers of the United States

---

[9]   Although the plaintiff also contends that he "suffered headaches for three days," Compl., ¶ 29, his medical records contain no evidence that he reported any headaches during his medical examination.

[10]   The Court has reworded defendant's proposed wording, as the dime-sized contusion is an injury, albeit a trivial one.

Government" are covered by the FTCA. Id. The statute defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Id. It appears that Lieutenant Hinton is an investigative or law enforcement officer within the meaning of the statute.[11]

The complaint alleges the torts of assault and battery.[12] Under the FTCA, plaintiff must establish that his injuries were "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).[13]

Under Tennessee law, "assault [is] defined as 'any act tending to do corporal injury to another, accompanied by such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person.'"

_____

[11]    As the United States is currently the only party to this action, the claims against the individual defendants having been dismissed pursuant to 42 U.S.C. § 1997e(a), a certification by the Attorney General is not required. See 28 U.S.C. § 2679(d)(1).

[12]    Although the complaint also lists claims for negligence, intentional infliction of emotional distress, and willful, wanton, and reckless conduct, Compl., p. 1, plaintiff only exhausted the claims of assault and battery.

[13]    Plaintiff contends that he is also entitled to relief pursuant to 18 U.S.C. § 4042. That issue will be addressed infra.

<u>Thompson v. Williamson County, Tenn.</u>, 965 F. Supp. 1026, 1037 (M.D. Tenn. 1997) (citations omitted). There must be a threat of immediate physical harm to the plaintiff. <u>Raines v. Shoney's, Inc.</u>, 909 F. Supp. 1070, 1083 (E.D. Tenn. 1995) (threat that "'there would be some "ass whippings" if a lawsuit was filed' . . . does not suggest the immediacy of harm necessary to constitute an assault").

The tort of battery is "any intentional, unlawful and harmful (or offensive) contact by one person with the person of another." <u>Thompson</u>, 965 F. Supp. at 1083 (quoting <u>Raines</u>, 909 F. Supp. at 1038); <u>see also</u> <u>Rushing v. State</u>, 196 Tenn. 515, 522, 268 S.W.2d 563, 567 (1954). "'A touching of the person of the prosecutor, or something intimately associated with, or attached to, his person, for an unlawful purpose, is essential to the offense of battery.'" <u>Lewis v. Metropolitan Gen. Sessions Court for Nashville</u>, 949 S.W.2d 696, 703 (Tenn. Crim. App. 1996) (citation omitted).

The intent necessary to constitute an assault and battery is either an express desire of the defendant to inflict injury or the doing of an act in such a reckless and wanton manner that the natural and probable result thereof will be to inflict injury. <u>Saunders v. State</u>, 208 Tenn. 347, 354, 345 S.W.2d 899, 902 (1961).

In this case, the defendant contends that the plaintiff cannot raise a triable issue as to whether an assault and battery

10

occurred. The analysis of this claim requires an examination of the plaintiff's specific allegations concerning these torts:

    13.  When plaintiff arrived at the segregation unit, officer Defendant Dillard and Defendant Miller dressed him out in the holding cell.

    14.  After they finished Defendant Dillard cuffed Plaintiff up and he asked Defendant Miller where was he going? Defen[]dant Miller stated "in there with inmate Richardson".. [sic]

    15.  Plaintiff then told Defendant[s] Dillard and [M]iller that he is protective custody, he has contracts on his life, he's scar[e]d for his life and he ca'nt [sic] have a cellmate". Defendant Dillard then escorted Plaintiff to Defendant Lt. Hinton in the office.

    16.  Plaintiff told Defendant Hinton that he's scar[e]d for his life, has contracts on his life, he's protective custody and he ca'nt [sic] have no cellmate because of his safety concerns and that his Mother is worried about him.

    17.  Defendant Hinton then stated "inmate Richardson is not going to hurt you". Plaintiff then stated "that he could'nt [sic] guarantee that under my circumstances and that he scar[e]d for his life" [sic]. Defendant(s) Dillard, Miller and Collins was present in the office when Plaintiff expressed fear for his life.

    18.  Defendant Dillard then escorted plaintiff back to the holdin[g] cell and removed the hand cuffs.

    19.  A few minutes later defendant Hinton came to the holding cell door and stated" [sic] that Plaintiff did'nt [sic] have no choice he was going in the cell with [R]ichardson B-102. Plaintiff told Defendant Hinton that he could'nt go in there.. [sic] Defendant Hinton then stated "cuff up.["] . . .

    20.  Plaintiff again told Defendant Hinton that he is scar[e]d for his life and he could not force him in that cell with a cell-mate". [sic]

21.   Defendant Hinton then stated "I'm going to tell you one more time before he send the team up in there to cuff Plaintiff up", Cuff up"! [sic]

22.   Defendant Hinton then stated "I'm going to tell you one more time before he sent the team up in there to cuff Plaintiff", Cuff up"! [sic]

23.   Defendant Hinton then stated "Lets go"! Plaintiff sttaed [sic] to Defendant that he is violating his rights and Bureau Of Prisons rules and regulations, he is scar[e]d for his life and that he could'nt [sic] force me in that cell.

24.   Defendant Hinton and Defendant Miller then willfully and maliciously grabbed Pla[i]ntiff by his left arm and neck, Defendant Dillard grabbed him by his right arm with force and with force they pushed me to B-bottom range.

25.   Defendant Collins was standing office [sic] and he told her his right's [sic] are being violated and asked he [sic] to please call the Operation LT. but Pla[i]ntiff was ignorned [sic]. Defendant Colins [sic] was the Officer in Charge of segregation during this event.

26.   Pla[i]ntiff continued to tell Defendant(s) Hinton, Dillard and Miller that they were hurting him and please, he was scar[e]d for his life, but he was ignored.

27.   During these events Pla[i]ntiff did'nt resist, was not out of control, did not threaten the segregation staff in any fashion or break any prison rules and Inmate Joe Richardson witn[e]ssed this use of force to be placed in his cell, witnessed my injury and will testify at trial regarding these events.

28.   When Pla[i]ntiff got to the cell Defendant Miller open[ed] the door and Defendant Hinton and Defendant Dillard pushed me in the cell with force. Defendant Hinton then stated" that he better give him the cuffs back or he'll come in there and beat them off Pla[i]ntiff. Defendant Dillard removed the hand cuffs.

12

> 29.   [P]la[i]ntiff observed a[n] injury on his left
> arm . . . , the arm Defendant Hinton applied force to,
> and Pla[i]ntiff suffered headaches for three days.[14]

Plaintiff has not come forward with sufficient evidence to raise a triable issue concerning his assault and battery claims. With respect to the alleged altercation that the plaintiff contends resulted in a bruise on his arm, the BOP employees did not touch the plaintiff for an unlawful purpose. The plaintiff is a federal prisoner, and the BOP employees who work at FCI-Memphis have a responsibility to maintain order that may include the assignment of inmates to cells.[15] Plaintiff has not presented evidence that the BOP employees intended to inflict injury on him, or that they accomplished the cell extraction in such a reckless and wanton manner that the natural and probable result thereof would be to inflict injury. The care taken by the BOP employees is demonstrated by the fact that the only documented injury suffered by the plaintiff consists of a small bruise on the inside of his

---

[14]    The plaintiff's allegations concerning the failure to provide him with sheets and "hygeins," Compl., ¶ 30, have no bearing on his tort claims for assault and battery.

[15]    Thus, in the Eighth Amendment context, the courts recognize that not every use of force that would be actionable as assault or battery at common law is actionable in the prison context. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); Combs v. Wilkinson, 315 F.3d 548, 556 (6th Cir. 2002) ("[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law").

13

left elbow. FF 18; <u>see also</u> FF 19.[16] Even if it is assumed that the bruise was incurred during the cell extraction, plaintiff has come forward with no evidence that the amount of force necessary to effect his removal from the holding cell was unreasonable. To the contrary, the plaintiff contends only that prison employees grabbed him by his left arm and neck, another prison employee grabbed him by his right arm "with force," and they forcibly pushed him to the area in which they planned to place him. Compl., ¶ 24.[17]

There are two other potential bases for an assault claim that, although not clearly articulated in the papers submitted by

---

[16]    In the Eighth Amendment context,

the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." [<u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986).] In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." <u>Ibid.</u> The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

<u>Hudson</u>, 503 U.S. at 7.

[17]    In his response to the summary judgment motion, plaintiff asserts that inmate Joe Richardson witnessed the alleged assault, Brief in Opposition to Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, filed Feb. 18, 2005 ("P. 02/18/05 Br."), at 5, but he has not submitted an affidavit from Richardson. The plaintiff also asserts that an Officer Collins, who was in charge of the segregation unit, witnessed the assault. The plaintiff cannot defeat a summary judgment motion by speculating about the evidence that may be available to him at trial. <u>Cox v. Kentucky Dep't of Transp.</u>, 53 F.3d 146, 149 (6th Cir. 1995) ("Essentially, a motion for summary judgment is a means by which to 'challenge the opposing party to "put up or shut up" on a critical issue.'"). The plaintiff has not filed a Rule 56(f) affidavit that indicates the need to obtain the statements of these witnesses. Finally, the Court notes that the Joe Richardson who the plaintiff apparently relies on to prove his case is apparently the same inmate the plaintiff claimed he could not be celled with at FCI-Memphis because of his purported fears for his safety.

either party, need to be briefly addressed. First, it is possible that plaintiff's assault claim arises from the decision by FCI-Memphis employees to house the plaintiff with another inmate in the SHU despite his stated concerns for his safety. In this case, however, plaintiff cannot raise a triable issue as to whether the BOP employees intended to injure the plaintiff. It is undisputed that, as soon as the plaintiff reported the alleged threat to him, he was immediately removed from the general population and placed in the SHU pending an investigation. FF 3-5. It is also undisputed that Lieutenant Hinton investigated the alleged threat to the plaintiff and determined that no known enemies of the plaintiff were housed at FCI-Memphis. FF 7-10. Finally, despite these findings, the BOP employees did not return the plaintiff to the general population but, instead, sought to house him with another inmate who the plaintiff does not contend posed a threat to him. Under these circumstances, plaintiff's stated fear of an assault by other inmates cannot give rise to an assault claim against BOP employees.

Finally, although virtually ignored in the papers filed by both parties, it is possible that plaintiff is asserting an assault claim based on a purported threat by Lieutenant Hinton to assault the plaintiff. See Compl., ¶ 28 (Hinton alleged stated that he better get the handcuffs back "or he'll come in there and beat them off Pla[i]ntiff"). However, the plaintiff does not contend

15

that this purported statement was accompanied by any type of threatening gesture that indicated a serious intention to assault him, and he also does not contend that he actually believed that a physical assault by Hinton was imminent.

For all the foregoing reasons, the Court GRANTS summary judgment to the defendant on the plaintiff's claims of assault and battery.

As previously mentioned, <u>see</u> <u>supra</u> p. 9 n.13, plaintiff also contends that, independent of state law, 18 U.S.C. § 4042 creates a standard of care that is enforceable under the FTCA. That statute provides:

> The Bureau of Prisons, under the direction of the Attorney General, shall—
>
> . . . .
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise.

18 U.S.C. § 4042(a)(2). In <u>United States v. Muniz</u>, 374 U.S. 150, 164-65 (1963), the Supreme Court held that "the duty of care owed by the Bureau of Prisons by federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." Accordingly, "[t]he FTCA allows suit by a federal prisoner for personal injury suffered as the result of employee negligence." <u>Flechsig v. United States</u>, 991 F.2d 300, 303 (6th Cir. 1993). "In order to determine liability, the elements of state tort law must be applied." <u>Id.</u>

16

Under Tennessee law, the elements of a claim for common-law negligence are "'(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.'" <u>Colston v. Citizens Tri-County Bank</u>, No. M2003-01379-COA-R3-CV, 2004 WL 2363650, at *5 (Tenn. Ct. App. Oct. 20, 2004) (quoting <u>McClenahan v. Cooley</u>, 806 S.W.2d 767, 774 (Tenn. 1991)). The applicable standard of care is ordinary care to prevent any foreseeable injury. <u>Sandford v. Metropolitan Gov't of Nashville</u>, No. 01-A-01-9606-CV00251, 1997 WL 24863, at *4 (Tenn. Ct. App. Jan. 24, 1997) ("The Court further finds that the police officers and the plaintiff are guilty of common law negligence for failing to exercise ordinary care under the circumstances which proximately caused the plaintiff's injuries."); <u>see also</u> <u>Miller v. Berry</u>, 457 S.W.2d 859, 862 (Tenn. Ct. App. 1970).

The plaintiff's brief in opposition to the summary judgment motion cites 18 U.S.C. § 4042 but does not explain how the actions of the BOP employees constituted common-law negligence. Instead, the plaintiff's brief focuses on the intentional torts of assault and battery. The plaintiff does not argue that the bruise on his elbow was incurred because the BOP employees did not employ ordinary care in extracting him from his cell. To the contrary, the plaintiff alleges that the BOP employees "maliciously grabbed

Pla[i]ntiff . . . with force," Compl., ¶ 24, forced him down the hall, id., and "pushed [him] in the cell with force," id., ¶ 28. Likewise, in light of the care taken by BOP employees to investigate the risk to the plaintiff by his fellow inmates at FCI-Memphis, nothing in the plaintiff's factual recitation would permit a trier of fact to conclude that the actions of the BOP employees were negligent.[18]

For all the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.

The Court must also consider whether plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callahan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in

---

[18]     In his brief, the plaintiff asserts, vaguely, that he "was suppose[d] to be placed in a cell alone under (SHU) (PC) policy," P. 02/18/05 Br. at 4, but he has introduced no evidence to support that assertion. Moreover, assuming that the BOP employees acted contrary to some BOP Program Statement (a fact that has not been established), "[t]he Program Statement . . . is not a regulation from which negligence for violation should arise per se. . . . It is, instead, simply the Bureau's written statement of its internal operating procedures and thus insufficient to create per se liability whenever it is not followed." Flechsig v. United States, 991 F.2d at 304.

forma pauperis, the prisoner must file his motion to proceed in
forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-
(5).

        The good faith standard is an objective one. Coppedge v.
United States, 369 U.S. 438, 445 (1962). An appeal is not taken in
good faith if the issue presented is frivolous. Id. The same
considerations that lead the Court to grant the defendant's motion
for summary judgment also compel the conclusion that an appeal
would not be taken in good faith.

        It is therefore CERTIFIED, Fed. R. App. P. 24(a), that
any appeal in this matter by plaintiff is not taken in good faith.
Leave to proceed on appeal in forma pauperis is, therefore, DENIED.
Accordingly, if plaintiff files a notice of appeal, he must also
pay the full $255 appellate filing fee or file a motion to proceed
in forma pauperis and supporting affidavit in the Sixth Circuit
Court of Appeals within thirty (30) days.

        IT IS SO ORDERED this __29th__ day of September, 2005.


                                    _____
                                    J. DANIEL BREEN
                                    UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 34 in
case 2:03-CV-02870 was distributed by fax, mail, or direct printing on
September 30, 2005 to the parties listed.

---

William W. Siler
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Aijalon Wallace McLittle
FCI- Sheridan
21050-039
P.O. Box 5000
Sheridan, OR 97378

Honorable J. Breen
US DISTRICT COURT